**People of the State of Illinois, Plaintiff-Appellee, v. Jorge Suarez, Defendant-Appellant.**

**Gen. No. 51,838.**

First District, Second Division.

May 28, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and

James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Richard A. Rinella, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

Defendant, Jorge Suarez, was indicted for robbery and aggravated battery. At a bench trial he was found guilty of both offenses and sentenced to the Illinois State Penitentiary for two to five years on each charge, the sentences to run concurrently. Defendant appeals, contending that his constitutional right to a jury trial was not understandingly and knowingly waived, and that the State failed to prove him guilty beyond a reasonable doubt.

Defendant first contends that he did not understandingly waive his right to a trial by jury.

When the case was called for trial, and before defendant signed the jury waiver, the following colloquy took place in open court:

>THE COURT: "Ready?"
>
>STATES ATTORNEY: "The State is ready, your Honor."
>
>THE COURT: "The State is ready. Is this a bench or jury?"
>
>DEFENSE COUNSEL: "This is a bench trial."
>
>THE COURT: "A bench trial. We will pass it until 10:30 or thereabouts."

(After an interval of time, the following proceedings took place.)

>DEFENSE COUNSEL: "I have talked to the defendant, Jorge Suarez, and have explained to

him his constitutional right to a trial by jury and also explained to him his right to waive that right and submit the cause to hearing before the Court and at this time I would ask Mr. Suarez to sign this jury waiver."

THE COURT: "You know what a jury trial is, Mr. Suarez, putting twelve people in the box there and they listen to the witnesses and they come in with a verdict of guilty or not guilty."

"By signing that document it means that the judge listens to the witnesses and he enters a finding of guilty or not guilty rather than the jury. Do you understand that?"

THE DEFENDANT: "I understand it a little bit."

DEFENSE COUNSEL: "At this time I present to the court the jury waiver signed."

THE COURT: "Let the waiver be recorded."

■ There is no specific or defined formula to follow in determining whether a jury waiver is understandingly made, and the determination must therefore rest upon the facts of each particular case. People v. Crable, 80 Ill App2d 243, 225 NE2d 76 (1967); People v. Wesley, 30 Ill2d 131, 195 NE2d 708 (1964).

Counsel for defendant argues that defendant's reply to the trial judge's inquiry indicated that he did not knowingly waive his right to a jury trial. We do not agree. Defendant's attorney informed the court that he had explained to the defendant his constitutional right to a jury trial. The court then gave a detailed but simple definition of a trial by jury and the effect of a waiver of that right. Defendant then signed the jury waiver. There is no allegation that defendant was illiterate. While his answer to the court's question was ambiguous, it did not show lack of comprehension of his rights.

In People v. Palmer, 27 Ill2d 311, 189 NE2d 265 (1963), defense counsel first stated that he was not sure whether he wanted a bench or jury trial, but after a conference

156

with the state's attorney, announced that it would be a bench trial. The court then questioned the defendant as to whether he wished to waive the jury, and asked him whether his counsel had explained his right to a jury trial, his right to waive the jury and the effect of such a waiver. Defendant replied that he didn't know about such things. His counsel then said: "We'll say yes for the record. I explained that to you didn't I?" The defendant answered: "Yes you did." The court held that the defendant had expressly and knowingly waived his right to a jury trial.

Defendant cites People v. Turner, 80 Ill App2d 146, 225 NE2d 65 (1967), wherein the court ruled that defendant had not knowingly waived his right to a jury trial. It is clearly distinguishable from the case at bar. In Turner, defendant was illiterate, and he stated that he did not understand the process. The court did not instruct defendant as to his right to a jury trial, and while he ordered defense counsel to do so, there was no indication in the record as to that explanation. In the instant case, the court gave a clear explanation of defendant's right to a jury trial after defense counsel made a positive statement that he had advised defendant of that right.

■ We find that the trial court was correct in its determination that the right to a trial by jury was expressly and understandingly waived.

Defendant next urges that the State failed to prove him guilty beyond a reasonable doubt. A summary of the facts follows.

The complainant, Zbigniew Pichor, testified that on the evening of April 10, 1966, after visiting a friend, he had taken the wrong bus to go home. He waited for another bus, then entered a tavern located at 1148 N. Clark Street, Chicago. Pichor, who had lived in this country for four years, spoke only Polish and testified at trial through an interpreter. He remained in the tavern for one to two hours, drinking two beers during that time.

In paying for the drinks, Pichor placed his wallet containing $12 on the bar. He also had drunk two beers earlier at his friend's home. Defendant, who was in the tavern when Pichor arrived, was sitting in the corner of the tavern about 15 feet away from Pichor who sat near the door. There were about ten other customers in the tavern. Pichor testified that he did not have any conversation with defendant in the tavern, but that a blond woman talked to him. However, since he did not speak English, he could not understand her. He also saw defendant talking to the same woman. Pichor left the tavern near midnight intending to cross the street to catch the bus. At this time he saw defendant along with another man leave the tavern. Pichor then testified that defendant asked him for $2, and that when he refused and tried to walk across the street he was hit on the head and lost consciousness. At the moment he was struck, defendant was a half step behind him. The other man was off to the side. He did not see the defendant's face during the attack, but he saw his hands moving and beating him. He stated that it was probably the defendant who struck him. He did not see anyone take anything from him because he became unconscious. He regained consciousness in the hospital where he discovered that his watch, wallet and $12 had been taken from him. He remained in the hospital for over five weeks, sustained permanent injuries, and had to have plastic surgery performed on his face.

Officer Thomas O'Malley testified that he found Pichor lying unconscious in a gangway. He also testified that he could not detect any odor of alcohol on Pichor's breath. Officer Frank Blasch testified that he showed Pichor an album of pictures, from which he identified a picture of defendant as his assailant. Defendant was arrested on April 20, 1966.

William Ridlon was the only witness for the defense. He testified that he was a bartender at the tavern. He

was not on duty during the evening of April 10, 1966, but came to the tavern at about 11:00 p. m. He saw defendant, whom he knew for about two or three years, in the tavern accompanied by a large blond woman. Pichor came in a few minutes after defendant arrived. There was a disagreement between defendant and Pichor. Defendant told the witness that Pichor had followed him and the girl from another tavern, apparently interested in defendant's girl friend. Pichor was talking to both defendant and the girl. Ridlon also testified that Pichor was intoxicated, boisterous and annoying to the other patrons. Defendant and the girl left the tavern, and Pichor departed five to ten minutes later. Ridlon did not see any of the parties after they left the tavern. Ridlon had been convicted of burglary in 1965 and had been placed on probation for three years.

 "Where the only question is one of identification, the testimony of one credible witness, if positive, is sufficient to convict, and where a case is tried by the court without a jury, the determination of the credibility of the witnesses and the weight to be accorded their testimony is committed to the trial judge, and unless the judgment is found to rest on doubtful, improbable or unsatisfactory evidence or clearly insufficient evidence, a reviewing court will not substitute its judgment for that of the court below." People v. Garrett, 82 Ill App 2d 192, 226 NE2d 429 (1967). The identification of the accused may be established by circumstantial evidence. People v. Fitzpatrick, 359 Ill 363, 194 NE 545 (1935). To warrant a conviction on circumstantial evidence the facts proved must so thoroughly establish the guilt of the person accused as to exclude every reasonable hypothesis of his innocence. People v. Dougard, 16 Ill2d 603, 158 NE 2d 596 (1959). Defendant argues that he was not proved guilty beyond a reasonable doubt because Pichor's identification as to who struck him was doubtful, and because he did not see anyone take his money or property.

159

The victim testified that the defendant asked him for money, and that when he refused and turned away, he was immediately struck and beaten. He also testified that at that moment, defendant was a half step behind him and he could see his hands beating him. Although he stated that he could not see defendant's face during the assault, this was a positive identification of the defendant as the assailant. It is clear that the only possible assailant was the defendant. The victim had $12, his watch and wallet taken from him. Pichor's testimony that he was struck and knocked unconscious immediately after he had refused to give defendant money was evidence of a convincing and reasonable certainty that it was the defendant who robbed him. While no one saw the victim's money and property taken from his person, we find that there was sufficient credible circumstantial evidence to support the conviction of robbery.

Defendant also points to Ridlon's testimony that the victim was intoxicated and had followed defendant to the tavern to show that there were conflicts in the evidence. However, the credibility of the witnesses and the resolution of such conflicts were clearly within the province of the trial court.

Accordingly, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

BURKE, P. J. and LYONS, J., concur.