THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BILLY W. JOHNSON, Defendant-Appellant.

(No. 54753;

First District—December 16, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Herbert Becker, Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Daniel A. Pierce, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

The defendant, Billy W. Johnson, was found guilty and convicted of arson in a bench trial. He was sentenced to a term in the penitentiary of two to ten years. The defendant appeals that conviction.

We affirm.

The facts are not in dispute, and, therefore, will be briefly summarized. On November 7, 1968, at approximately 8:30 P.M. the defendant was involved in an altercation with a Samuel Duchen, the president of Liquor Base, Inc., a retail liquor store and recreation room which operated in a leased building in Summit, Illinois. The altercation occurred on the premises of Liquor Base and ended when defendant ran away. Approximately one hour later at 9:30 P.M. the defendant returned to Liquor Base and entered that portion of the building operating as a liquor store and bar. He was holding a bottle containing a flaming torch which he threw in the direction of the bar. The building began to burn immediately. Ultimately, the interior walls of the building and the fixtures and personalty therein were destroyed by the fire.

The defendant was subsequently arrested, and at the time of his arraignment a public defender was appointed to represent him. Because of questions raised regarding his competency, a hearing was held before a jury on this issue, but they were unable to reach a finding. A second jury was impaneled, and after hearing evidence a finding of competency was returned. The defendant was tried, and the previously mentioned conviction resulted.

On appeal the first issue raised by the defendant is that the trial court should not have accepted his jury waiver, since such waiver was not made in accordance with the relevant statute. The statute in question is Ill. Rev. Stat. 1967, ch. 38, par. 103—6. It reads as follows:

"Every person accused of an offense shall have the right to a trial by

jury unless understandingly waived by defendant in open court."

The colloquy with both defendant's counsel and defendant regarding defendant's waiver was as follows:

"MR. DOWNS: * * * I attempted to speak to him briefly today, Judge, and my experience is similar in that he only indicated to me his desire to have a bench trial.

THE COURT: Very well. Let's proceed.

MR. DOWNS: Judge, I don't believe I am ready to proceed today.

THE COURT: Mr. Johnson has been asking for trial every time he comes out here. We have gone through Mr. Darragh, Mr. Zwick, Mr. Himel, now, please, give this man a trial, Mr. Public Defender.

* * *

THE COURT: Well, we are going to hold you to trial. Mr. Johnson, you wish to waive your right to a jury trial and submit your case to this Court?

DEFENDANT: Why don't you have the trial today? I have been having—

THE COURT: I want to ask you now, do you want to be tried by this judge or a jury?

DEFENDANT: I will be tried by this one.

THE COURT: Indicate that by signing this jury waiver. Would you sign this jury waiver and you will be tried by me. We will start the case today.

MR. DOWNS: Sign your name right here. (Indicating) Judge, the defendant has affixed his signature to a jury waiver form.

THE COURT: Very well."

The defendant argues that since neither the Court nor his counsel ever told the defendant that he was, under the Constitution, entitled to a jury trial that his jury waiver was not understandingly made as required by the statute.

■■■ It is a well established doctrine that it is the responsibility of the trial judge to insure that the waiver of a jury trial is knowingly and understandingly made. (*People v. Wesley* (1964), 30 Ill.2d 131, 195 N.E.2d 708.) This is a responsibility which cannot be perfunctorily discharged. (*People v. Surgeon* (1958), 15 Ill.2d 236, 154 N.E.2d 253.) However, it is also well established that there is no precise formula for determining whether a defendant knowingly and understandingly waives his right to trial by jury. Each case depends on its particular facts. *People v. Richardson* (1965), 32 Ill.2d 497, 207 N.E.2d 453.

Looking to the instant case we see that the trial judge queried the defendant as to his choice regarding waiver of a jury trial. The de-

fendant indicated his choice was to be tried by the judge. The defendant executed a written jury waiver. As this Court said in *People v. Collins* (1969), 112 Ill.App.2d 458, 251 N.E.2d 325, at page 460:

"It is most significant that in the instant case there was nothing said or asked by the defendant to alert the trial judge to the need to give the defendant any further explanation of the nature of a trial by jury. We believe that it would be an unwarranted extension of the *Bell* case to read that decision as requiring such an explanation in all cases * * * * ."

There is nothing of record to indicate that the defendant did not understand that he had a right to a jury trial and that he was willingly waiving that right. In *People v. Spencer* (1969), 115 Ill.App.2d 398, 253 N.E.2d 672, at page 400, the Court said:

"We must assume however in the absence of anything to the contrary that "waiver" and "jury" are words that are commonly understood."

The defendant cites the cases of *People v. Baker* (1969), 126 Ill.App.2d 1, 262 N.E.2d 7; *People v. Brownlow* (1969), 114 Ill.App.2d 458, 252 N.E.2d 685; and *People v. Sailor* (1969), 43 Ill.2d 256, 253 N.E.2d 397 in support of his argument on waiver.

In the *Sailor* case, *supra,* the Illinois Supreme Court held that an accused who permits his attorney, in his presence and without objection, to waive trial by jury is deemed to have knowingly and understandingly consented to such waiver and is bound by the attorney's action.

If the *Sailor* case applies at all in the case at bar, its application would have to be unfavorable to the defendant's position. While defense counsel did not directly indicate that, in compliance with the defendant's wishes, he was waiving the defendant's right to a jury trial, counsel did not clearly indicate to the court that in his communications with the defendant the latter had expressed his desire for a bench trial.

■■ The defendant, however, cites to us the dissenting opinion in *Sailor* wherein the sole dissenting justice argued that the trial court should not rely on the defendant's acquiescence to his attorney's waiver but should take time to elicit from the defendant himself a response sufficient to establish his understanding of his right to a jury trial. We need only briefly note the fundamental principle that it is the majority opinion which sets forth the controlling law in any case.

The *Brownlow* case, *supra,* which was decided prior to the *Sailor* case is also cited by the defendant in support of his argument on waiver. That case, to the extent it stands for the proposition that a defendant who remains silent while his counsel waives a jury trial is not deemed bound thereby and that the trial court is not allowed to rely on the professional

responsibility of the attorney by assuming that such waiver was knowingly and understandingly consented to by his client, must be deemed overruled *sub silento* by *Sailor.*

In the *Baker* case, *supra,* the defendant was not represented by counsel until the day he went to trial. At that time the trial court appointed counsel for him. The only consultation with counsel was "a discussion off the record" subsequent to which counsel informed the trial court that the defendant was waiving a jury. No questions were asked of the defendant by the court, and he was not asked to sign a written jury waiver. The Appellate Court in *Baker* concluded that the *Sailor* case was not controlling, because *Baker* involved court-appointed counsel while *Sailor* and the cases it cited in support of its holding on jury waivers all involved privately retained counsel. The Appellate Court in *Baker* thought that since private counsel are generally able to consult with and advise their clients long before trial, jury waivers by such counsel should be deemed binding. However, in the case before them there was a court-appointed counsel who had only a few minutes prior to trial to consult with the defendant Baker.

The facts in the case at bar make it clearly distinguishable from the *Baker* case. In the instant case, the defendant himself was addressed by the court and indicated his desire to have a bench trial, and he signed a written jury waiver. Further, even though defendant was represented by appointed counsel, he had been so represented since the earliest proceedings in his case and had more than adequate opportunity to discuss with the various public defenders assigned to him the advisability of waiving a jury.

■■ We must conclude in light of the above discussion that the waiver of a jury trial by the instant defendant was knowingly and understandingly made.

The second issue raised by the defendant is that there was a failure to prove beyond a resonable doubt a material allegation of the indictment, and this failure is fatal to his conviction.

■■ The language of the indictment in this case charged the defendant with arson "in that he, by means of fire, knowingly damaged the building of Liquor Base, Inc., a corporation, without the consent of said Liquor Base, Inc., * * *." The defendant argues that the common meaning of the words, "the building of Liquor Base, Inc." is that Liquor Base owned the building. Since Liquor Base only leased the building, the proof, which established that Liquor Base owned only the destroyed personalty, did not conform to the indictment, and this variance is fatal to the conviction.

■■ The defendant's argument on this issue is without merit. The pur-

pose of an indictment is to notify the accused of the exact charge against him so that he may prepare his defense accordingly. (*People v. Johnson* (1967), 79 Ill.App.2d 226, 223 N.E.2d 860; *People v. Bonner* (1967), 37 Ill.2d 553, 229 N.E.2d 527.) Under Ill. Rev. Stat. 1967, ch. 38, par. 20—1(a), arson is defined as:

"A person commits arson when, by means of fire or explosive, he knowingly:

(a) Damages any real property, or any personal property having a value of $150 or more, of another without his consent."

Ill. Rev. Stat. 1967, ch. 38, par. 20—1 states further:

"Property 'of another' means a building or other property, whether real or personal, in which a person other than the offender has an interest which the offender has no authority to defeat or impair, even though the offender may also have an interest in the building or property."

In *People v. Gaither* (1968), 103 Ill.App.2d 47, 243 N.E.2d 388 the indictment stated that "Thomas Gaither committed the offense of arson in that he, by means of fire, knowingly damaged the building of Flossie Gaither—lessee— * * *" The testimony at trial revealed that Flossie Gaither rented her apartment in a building with a number of other apartments. The defendant contended the indictment was insufficient in that Flossie Gaither neither owned nor was lessee of the entire building, but was merely a lessee of one of eighteen apartments in the building. The Appellate Court disagreed. It said at page 55:

"As a holder of a leasehold interest, Mrs. Gaither possesses an interest protected by the statute, and the language of the indictment is therefore sufficient."

In *People v. Feinberg* (No. 55315 Ill.App.Ct., 1971) the defendant attacked the indictment in question on the grounds that it failed to allege the property belonged to the complainant who was the lessee of the destroyed property. The Court there said:

"It is well settled that an indictment should notify the accused of the exact charge against him so that he may prepare a defense. *People v. Gaither*, No. 51426 Appellate Court of Illinois, 243 N.E.2d 388. A leaseholder's interest is covered by the arson statute, as is an owner's."

In keeping with the holdings of these above-mentioned cases, we think the language of the indictment in the instant case was sufficient.

■■ The third and final issue raised by the defendant is that he was denied his constitutional right to effective representation by counsel as granted under the Sixth Amendment.

The defendant's brief sets out at length certain colloquy which occurred in the trial court. Briefly, this colloquy establishes that when the

defendant's case was called for trial on July 14, 1969, it was established that the public defender assigned to represent the defendant was unavailable. Another public defender was assigned and the trial was begun notwithstanding that the newly assigned public defender protested that further time would be necessary in order that he might determine the feasibility of preparing an insanity defense. The trial judge rejected this request noting that the defendant himself had continually demanded a trial and that the case had already been delayed a number of months, that the defendant had been represented by the public defender's office from the initial proceedings in the case and that at various times prior to that day three different public defenders had been assigned to represent the defendant, the most recent of whom had assured the trial court that the defendant Johnson would be ready for trial on this day. It was the unavailability of this last-mentioned counsel that necessitated the new assignment of public defenders.

The defendant argues that the trial court arbitrarily forced a trial to take place and thus deprived the defendant of his constitutional right to effective representation by counsel in that defense counsel was not given sufficient time to adequately prepare. In support of his argument the defendant cites the cases of *Powell v. Alabama* (1932), 287 U.S. 45 and *People v. Green* (1969), 42 Ill.2d 555, 248 N.E.2d 116. Both of these cases are distinguishable on their facts from the case at bar. In *Powell* no counsel was appointed until the day the defendants went to trial. Further, the defendants in *Powell* were divided into three groups, and the first trial began only six days after indictment. Each of the three trials was completed in one day. In *Green* when the defendant's case was called to trial he requested a continuance on the grounds that he wished to be represented by his privately retained counsel who, according to the defendant, was then in Washington, D.C. on business. Without any inquiry into the matter, the trial court refused the continuance, appointed a public defender, and trial was commenced. In the case at bar, the defendant had been represented by the public defender's office from the initial proceedings in the case some six months previous to trial so that considerable time had passed during which the investigation and preparation of defendant's case could have been achieved. The record discloses that the defendant continually requested a trial. His competency to stand trial had been determined by a jury in an appropriate hearing. Finally, the record discloses that at the close of the State's evidence, the defendant counsel, in fact, was granted a continuance to further investigate the question of the defendant's sanity as a potential defense to the charges against him. This continuance, originally given for a week, was extended to cover a total period of 23 days.

In light of these circumstances, we find no merit to defendant's argument that he was denied effective representation of counsel.

Judgment affirmed.

McNAMARA, P. J., and DEMPSEY, J., concur.